UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

EDITH CAROLYN ESTEP,

                Plaintiff,        Case No.: 11-cv-11241
                                    Honorable Julian Abele Cook
                                    Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 17]

Plaintiff Edith Carolyn Estep ("Estep") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [12, 17], which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.  RECOMMENDATION**

For the reasons set forth below, the court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") assessment that Estep was not disabled during the relevant period between March 1, 2004 (her alleged onset date) and September 30, 2004 (the date she was last insured for benefits). Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [17] be GRANTED, Estep's Motion for Summary Judgment [12] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On July 11, 2007,[1] Estep filed an application for DIB, alleging disability as of March 1, 2004. (Tr. 91-92).[2] The claim was denied initially on September 10, 2007. (Tr. 41-44). Thereafter, Estep filed a timely request for an administrative hearing, which was held on October 27, 2009 before ALJ Troy M. Patterson. (Tr. 23-39). Estep, represented by attorney Mikel Lupisella, testified at the hearing. (*Id.*). On December 15, 2009, the ALJ found that Estep was not disabled. (Tr. 15-20). On January 20, 2011, the Appeals Council denied review. (Tr. 1-3). Estep filed for judicial review of the final decision on March 28, 2011 [1].

### B. Background

#### *1. Disability Reports*

In an undated disability report, Estep reported that a "fallen bladder" limits her ability to work. (Tr. 141). She indicated that, because of this condition, she cannot lift heavy objects, as doing so puts pressure on her bladder, which is very painful. (*Id.*). She also reported that she has "to go to the bathroom a lot." (*Id.*). She claimed that her condition first interfered with her ability to work on March 1, 2004, and that she did not work after that date because sitting for long periods of time put too much pressure on her bladder and caused her pain. (*Id.*). Prior to stopping work, Estep had been employed as a secretary on a full-time basis (from February 2003 through February 2004) and, previously, as a stock/cashier at a drug store (from November 1994

---

[1] In his decision, the ALJ indicated that Estep's application was filed on June 28, 2007. (Tr. 15). However, the record reflects an application date of July 11, 2007. (Tr. 89).

[2] The administrative record also contains an application for Social Security Income benefits ("SSI") filed by Estep on July 12, 2007. (Tr. 96-98). There is no indication in the record that Estep's SSI application was considered by the Social Security Administration in its initial denial of this case, by the ALJ in his decision, or by the Appeals Council. Moreover, Estep's counsel has not argued that it should have been considered. Thus, the court will disregard it.

through December 1997 and March 2002 through April 2002). (Tr. 142). She indicated that she had seen doctors at the Fenton Medical Center and at Hurley Medical Center[3] related to her medical condition. (Tr. 143-44). Estep reported that she had surgery at Hurley in 1992 to repair her fallen bladder, but indicated that a few years after this surgery, her bladder "fell again." (Tr. 144). She reported taking several medications for high cholesterol, high blood pressure, back pain, anxiety, and an antibiotic for bladder infections. (Tr. 145).

In a function report dated August 7, 2007, Estep reported that she lives with her spouse, and that after eating breakfast, she does a "small amount of housework" – including dusting and vacuuming – each day. (Tr. 108). She reported not sleeping well at night because of leg and arm pain, and because she frequently needs to use the bathroom. (Tr. 109). In response to a question about what she was able to do before the onset of her condition that she can no longer do, Estep indicated that she can no longer "walk long distance, lift heavy objects, sit long periods of time." (*Id.*). Estep indicated that she prepares her own meals on a "daily" basis, including sandwiches, frozen dinners, and some "complete meals." (Tr. 110). Indeed, she indicated that she has not experienced any changes in her cooking habits since the onset of her condition. (*Id.*). Similarly, she indicated that she can still do household chores, including light cleaning (each day) and laundry (once a week), but that she does not have the energy or ability to do yard work. (Tr. 110-11). She reported that she goes outside several times a day and is able to drive a car. (Tr. 111). She shops for groceries once a week, which takes her about an hour, and also shops for clothing on a less frequent basis. (*Id.*). She reported enjoying reading and watching television, and that she has experienced no change in her ability to enjoy these hobbies since the onset of her condition. (Tr. 112). She indicated that she spends time with friends, attends church on

---

[3] The administrative record contains no records from Hurley Medical Center.

Sunday mornings, and has no problems getting along with people. (Tr. 112-13). Despite these facts, Estep also indicated – somewhat inconsistently – that she doesn't "do any social activities" since the onset of her condition. (Tr. 113).

When asked to identify functions that were impacted by her condition, Estep checked several items related to her physical abilities, including lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, using her hands, and completing tasks. (*Id.*). She further specified that she cannot lift heavy objects, and that she experiences back and leg pain when squatting, back pain when bending, back and leg pain when standing, leg pain when walking, pressure on her bladder and back when sitting, back and leg pain when climbing stairs, and back and arm pain when using her hands. (*Id.*). She indicated that she can walk about one-quarter mile before needing to stop and rest for a few minutes. (*Id.*).

In an undated disability appeals report, Estep indicated that she has been suffering from a "severe bladder problem and arthritis since 2003," that her daily activities remain limited because of these conditions, but that her condition has not changed since the date of her last disability report. (Tr. 131, 133).

2. *Plaintiff's Testimony*

At the October 27, 2009 hearing before the ALJ, Estep testified that she had had surgery for her bladder condition at some point prior to 2004.[4] (Tr. 37). She further testified that, between March and September of 2004, she lived with her husband. (Tr. 29). She was able to shop for groceries and do yard work, including raking and maintaining flower beds. (Tr. 30-31).

---

[4] There is no medical evidence in the administrative record of such a surgery. Treatment notes from the Fenton Medical Center, dated August 9, 2000, indicate that Estep had a "hysterectomy in the early 80s because of uterine prolapse, gallbladder surgery in 80s." (Tr. 225). Later treatment records reflect only these surgeries, as well as an appendectomy (at age 17), a C-section, and subsequent removal of Estep's ovaries. (Tr. 181, 199, 205).

4

However, she could not lift more than five or ten pounds without getting "a lot of spasms and back aches." (Tr. 32). Estep testified that she worked as a secretary from 2003 to 2004, but that she had to stop because she had to "sit all day long" and had "to go to the bathroom so much" (approximately every thirty minutes). (*Id.*). According to Estep, the spasms in her stomach caused by sitting resulted in recurring bladder infections, and she had to "constantly be on antibiotic." (*Id.*). She testified that standing, sitting, bending, and stooping all pulled on her bladder, but that sitting down, putting her feet up, and avoiding a lot of walking helped her cope with the discomfort caused by her bladder problem. (Tr. 33).

       3.      *Medical Evidence*

Many of the medical records in the file post-date the time period in question (March 1, 2004 through September 30, 2004).[5] The only records covering the relevant time period are some treatment records from Estep's primary care physicians at the Fenton Medical Center (Dr. Schwarz, Dr. Duncan, and Dr. Humayun). Thus, the court will discuss the other records in the file only to the extent they shed light on Estep's condition during the time period at issue here. *See King v. Secretary of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990).

Dr. Schwarz's treatment notes indicate that, on March 8, 2004, Estep was seen at the Fenton Medical Center for complaints of cough and chest congestion. (Tr. 173). At this office visit – just one week after Estep claims she became unable to work – she did not complain of any bladder problems or resulting back or stomach pain. (*Id.*). Nor did she indicate that she could not work for medical reasons. (*Id.*). In a treatment note dated May 21, 2004, Dr. Humayun reported that Estep's abdomen was soft and bowel sounds were present. (Tr. 171). She had no

---

[5] For applications concerning disability insurance benefits, "the only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). *See also* Tr. 136-37 (listing alleged onset date of March 1, 2004, and date last insured of September 30, 2004).

tenderness or organomegaly. (*Id.*). No mention was made of any bladder problems at this visit. Likewise, when Estep returned for a follow-up visit on May 28, 2004, Dr. Humayun's treatment notes indicate no complaints of bladder problems or resulting back or stomach pain. (Tr. 172). And, on August 24, 2004, Estep saw Dr. Schwarz with complaints of sinus pain and pressure. (*Id.*). There was no mention of any bladder problems at this visit. (*Id.*).

On September 10, 2004, Dr. Schwarz saw Estep for an annual physical examination. In his treatment notes, Dr. Schwarz indicated that Estep reported that she was generally "doing well." (Tr. 169). He also noted that she had no acute complaints. (*Id.*). In addition, Dr. Schwarz noted that Estep had been maintaining a low fat and low cholesterol diet, had been walking three miles on a daily basis, and had lost approximately 25 pounds. (*Id.*). He further indicated that Estep denied chest pain or shortness of breath, and that there was no bowel or bladder dysfunction. (*Id.*). On September 23, 2005, at Estep's annual checkup, she stated that she was "feeling well." (Tr. 166). The next year, at her annual physical on October 23, 2006, Estep had no acute complaints and stated that she was "feeling well." (Tr. 160).

### C. Framework for Disability Determinations

Under the Act, disability insurance benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueunieman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Estep was not disabled during the relevant time period between March 1, 2004 and September 30, 2004. (Tr. 19-20). At Step One, the ALJ found that Estep had not engaged in substantial gainful activity from March 1, 2004 through her date last insured. (Tr. 17). At Step Two, the ALJ found that Estep had the severe impairment of "status post bladder surgery." (*Id.*). At Step Three, the ALJ found that Estep's severe impairment did not meet or medically equal a listed impairment. (*Id.*). The ALJ

7

then assessed Estep's residual functional capacity ("RFC"), finding that Estep was capable of performing "the full range of medium work as defined in 20 C.F.R. §404.1567(c)." (*Id.*). At Step Four, the ALJ determined that Estep's RFC assessment was consistent with her prior relevant work as a stock/cashier. (Tr. 19). Although the ALJ determined that Estep was capable of performing past relevant work, he alternatively found, at Step Five, that, based on application of the Medical-Vocational Guidelines, Estep also was capable of performing a significant number of jobs in the national economy. (Tr. 19-20). As a result, the ALJ concluded that Estep was not disabled under the Act between March 1, 2004, and September 30, 2004. (Tr. 20).

    **E.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Estep argues that, in concluding that she was capable of performing the full range of medium work – including her past relevant work as a stock/cashier – the ALJ failed to pose a hypothetical question to a vocational expert that adequately took into account all of Estep's limitations, because he failed to adequately assess the credibility of her subjective complaints. A review of the record and decision, however, shows that the ALJ committed no error warranting remand.

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Secretary of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981)*, quoting Beavers v. Secretary of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters,* 127 F.3d at 531. Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

In this case, after finding at Step Two that Estep had the severe impairment of "status post bladder surgery"[6] (Tr. 17), the ALJ concluded that Estep had the residual functional capacity to perform both the full range of medium work and her past relevant work. (Tr. 17-19). In reaching this conclusion, the ALJ considered both Estep's subjective complaints and the

---

[6] In many respects, this conclusion itself can be viewed as generous: as set forth above in Section II(B)(3), aside from Estep's own unsupported hearing testimony, there is no evidence in the administrative record supporting her assertion that she even had bladder surgery at some unspecified time prior to 2004. Moreover, the medical evidence does not necessarily indicate the existence of a severe impairment. Despite several visits to the Fenton Medical Center, Estep's medical records do not contain any complaints regarding difficulty working, difficulty with lifting, stomach spasms, or frequent use of the bathroom during the relevant time period.

objective medical evidence. The ALJ specifically referenced Estep's testimony that (1) if she lifted more than 5-10 pounds, she would have spasms in her stomach and back pain; (2) sitting with her feet up relieved some of her symptoms; (3) she had a lot of bladder infections; and (4) she needed to use the bathroom frequently. (Tr. 19). However, the ALJ found that while Estep's conditions could reasonably be expected to produce the alleged symptoms, her statements about the intensity, persistence and limiting effects of those symptoms were not entirely credible to the extent they conflicted with the RFC assessment. (Tr. 18). "Overall the [ALJ did] not find her activities consistent with her claim of disability during the period at issue." (*Id.*). Specifically, the ALJ noted that Estep had indicated she was able to do yard work (such as raking) and drive and shop for groceries and clothes during the time period in question.[7] (Tr. 18).

In addition to evaluating Estep's subjective complaints, the ALJ also considered the medical records in evidence, noting that there was "insufficient evidence in the overall record during the period at issue to support the limitations alleged by the claimant." (Tr. 19). Indeed, as the ALJ noted, Estep was seen at the Fenton Medical Center a handful of occasions during the time period at issue, primarily for cough, congestion, and sinus pain. (Tr. 19, 169-73). She did not, however, complain of bladder problems, back pain, stomach pain, or difficulty working during these visits. (*Id.*). On September 10, 2004, Estep saw Dr. Schwarz for an annual physical examination and reported that she was generally "doing well" and had no acute complaints. (Tr. 169). In addition, the ALJ noted that Estep reported at that visit that she had been walking three

---

[7] Estep takes issue with the ALJ's reliance on her admissions in this respect, asserting that: "The ALJ cites to only one page of that [disability report] form when deciding that her activities are not consistent with her claims of disability. However, when considering the form in its entirety, a different picture is painted." (Doc. #12 at 9). From a review of the ALJ's decision, however, it appears that he did in fact consider the entire disability form, in addition to other subjective evidence of Estep's condition. (Tr. 18-19). Furthermore, there is no requirement that the ALJ expressly discuss every piece of record evidence. *See Kornecky*, 167 Fed. Appx. at 508; *Van Der Maas v. Commissioner of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

miles per day. (Tr. 19, 169). The ALJ further noted that Estep complained of no bowel or bladder dysfunction at that time. (*Id.*).

In other words, the ALJ recognized the duty imposed upon him by the regulations and, in addition to Estep's own subjective complaints, he considered the objective medical evidence and Estep's daily activities during the relevant time period. Thus, the ALJ's credibility determination is supported by substantial evidence in the record, and his conclusion that Estep had the RFC to perform the full range of medium work – including her past relevant work – should not be disturbed.

Estep's argument that the ALJ should have presented a hypothetical to a vocational expert that included her additional subjectively reported limitations (which the ALJ properly rejected) is misplaced. The ALJ determined at Step Four that Estep was capable of performing her past relevant work. At Step Four, the burden to prove disability remains with the claimant, and the ALJ was not required to elicit the testimony of a vocational expert in order to determine whether Estep was capable of performing her past relevant work. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010); 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("[w]e *may* use the services of vocational experts . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").

Furthermore, although the ALJ went on to make alternative findings at Step Five of the sequential evaluation process, he did so by relying, properly, on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (known as the "grids") to conclude that there were other jobs existing in significant numbers in the national economy that Estep could have performed, given her age, education, work experience and the fact that he found her capable

of performing the full range of medium work. (Tr. 20).[8] Thus, the quality of any hypothetical question to a vocational expert here is moot given that the ALJ neither called, nor was required to call under these facts, a vocational expert to testify, let alone ask that expert a hypothetical question that included the limitations Estep suggests.

## III. CONCLUSION

For the foregoing reasons, the court RECOMMENDS that Estep's Motion for Summary Judgment [12] be DENIED, the Commissioner's Motion for Summary Judgment [17] be GRANTED and this case be AFFIRMED.

Dated: April 16, 2012  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith*

---

[8] Where an ALJ finds only exertional limitations, and where the claimant's other characteristics fit the criteria of the guidelines, the ALJ may properly use the grids, rather than expert testimony, to show that a significant number of jobs existed in the economy. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987); *Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

13

*v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 16, 2012.

s/Felicia M. Moses  
FELICIA M. MOSES  
Case Manager